## JOHN B. BROWN
### v.
## THE CALUMET RIVER RAILWAY COMPANY ET AL.

*Railroads—Right of Way—Mortgage—Judgment—Reformation—Re-scission—Estoppel.*

1. Where the aid of equity is invoked in the case of an alleged mistake in failing to make certain persons parties, unaccompanied or induced by inequitable conduct on the part of the defendant, the proper remedy is re-scission, or setting aside of the judgment, and not a reformation thereof.

2. Upon a bill filed by a railroad company praying, among other things, that persons named be compelled to release its right of way from the lien of a mortgage before the payment of the amount of the judgment in proceedings to condemn the same, this court holds that complainant was estopped by its condemnation proceedings and the judgment thereunder, from denying the defendant's right to the compensation awarded, and that the decree against him can not stand.

[Opinion filed June 2, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. O. H. HORTON, Judge, presiding.

Appellee filed its bill in the Circuit Court, alleging that it was authorized to construct and operate a line of railroad;

that its line passed over and across a portion of Sec. 7, T. 37 N., of R. 15, and it was necessary for its railroad to have a strip of land sixty feet in width across a portion of said section; that on July 21, 1887, it filed its petition under the eminent domain law in the County Court of Cook County, against John B. Brown and Lucy T. Brown, his wife, and others, to condemn said strip of land, and that on December 24, 1887, a trial was had in said County Court before a jury, and a verdict returned that it should pay $17,500 as compensation for said right of way, and damages to that part of said section 7 known as block "B," not taken; that at the trial of said cause John B. Brown appeared in person and by attorneys, claiming to be the owner of the land taken as well as of the whole of block "B"; that Brown made a motion for a new trial, which was overruled, and a judgment was entered directing that said company should pay to the county treasurer of Cook county for the benefit of the owners, or to John B. Brown, claimed to be such owner, the said sum of $17,- 500; that Brown appealed from said judgment to the Supreme Court; that pending said appeal, complainant gave a bond and took possession of the land; that on April 6, 1888, and while the appeal was still pending in the Supreme Court, said Brown appealed to the County Court for an order on Davis, county treasurer, to pay to him (Brown) said sum of $17,500; that then for the first time complainant learned that one Richard C. Dale claimed to hold a mortgage upon the whole of block "B," said mortgage having been executed by said John B. Brown and wife to said Dale on July 12, 1884, to secure said Brown's note of $150,000 with interest. Alleges that prior to filing its petition to condemn, it went to certain abstract makers of the city of Chicago to ascertain the names of all persons interested in said land described in said petition, and was furnished by said abstract makers with such a list, but that the name of said Dale was omitted from said list; that, relying on the information thus obtained, and believing the list so furnished did contain all the names of persons interested in said land, Dale was not made a party defendant to said condemnation proceeding. On learning of said mortgage, com-

plainant at once, on April 6, 1888, notified said Davis, county treasurer, that the said money paid to him was for the use and benefit of said Richard C. Dale, as well as said Brown. That Dale was a resident of Philadelphia and that he was represented in Cook county by his attorney, Crawford, and that at the time of the trial of said condemnation suit in December, 1887, said Crawford was present in the County Court, but whether representing Dale or not, complainant is not advised. Brown was represented by counsel of his own on the trial. That complainant's solicitor visited Dale in Philadelphia, when it was found he was interested, and stated the matters to him. Dale said he was aware of said proceedings, but referred the matter to his counsel, Crawford, in Chicago. That thereupon complainant requested Crawford to take some action to protect Dale's interest in the said fund, but he refused. Complainant represents that the mortgage and notes secured thereby are past due and the land in the mortgage described is not sufficient in value to satisfy the note or debt secured thereby, and that in the case of foreclosure and sale of the premises described 'in said mortgage, exclusive of complainant's right of way, the premises would not realize a sum sufficient to satisfy the note or debt secured by the mortgage without recourse to the right of way or to the money now in custody of said treasurer; charges that Brown, Dale and others are combining and confederating to obtain undue advantage and to secure the said money in the hands of the said Davis, and to hold complainant's right of way liable for the debt secured in the mortgage to Dale; prays that Dale and the other defendants be compelled to release complainant's right of way from the lien of said mortgage before the payment to them of any of the funds in the hands of Davis; that Brown may be restrained from demanding or receiving said money, or any part thereof, until he shall produce a full and proper release of the complainant's right of way from the lien of said mortgage, and for other relief.

Publication notice as to Dale and other defendants, except Brown and Davis. No answer and appearance for them. Answer on cross-bill by Brown. Answer by Davis. Decree,

after certain findings, directs the dismissal of Brown's cross-bill, and decrees that the legal holders of the promissory note executed by said Brown for the sum of $150,000, payable to the order of Dale, and secured by said mortgage, are entitled to the money in the hands of Davis as county treasurer, and that upon application the treasurer shall pay said sum to said legal holders; that in case of the foreclosure of said mortgage and sale thereunder, such sale shall be made in inverse order of alienation by said Brown, treating such condemnation as a sale; that in case sufficient is not realized exclusive of complainant's interest in said lands, said sum of $17,500 should be applied in payment and extinguishment, so far as said sum shall go, of said mortgage debt upon the land taken by condemnation; that said Davis and his successors be restrained from paying any part of said money to said Brown, or to any other person than the legal holders of the said promissory note; that said treasurer shall not be liable for interest on said money, and that Brown pay the costs to be taxed, etc. From this decree the appeal is prosecuted.

Messrs. OSBORN & LYNDE, for appellant.

1.   The complainant was not entitled to any other relief as against the consequences of its mistake, than possibly to ask that the condemnation proceeding and judgment be set aside, and for leave to condemn anew, and repayment of the money deposited with the county treasurer.   It could not ask for relief against its mistake and retain and keep the benefits of the judgment.   It could not keep the land and deprive Brown of the money.

2.   The complainant is estopped by its petition and judgment in the condemnation proceeding from denying Brown's title to the land condemned and right to receive the compensation awarded him by the judgment.

It is a well established principle of the courts of Illinois, governing condemnation proceedings, that the petitioner in such proceedings is alone responsible for the parties it brings into court, and for any mistakes it may make.   Having brought the respondent into court by its petition, alleging title to the premises in question to be in him, it is estopped from denying

or questioning his title.   P., P. & J. R. R. Co. v. Laurie, 63 Ill. 264; St. L., etc., Ry. Co. v. Teeters, 68 Ill. 144; Ch. & Iowa R. R. Co. v. Hopkins; 90 Ill. 316; South Park Comm'rs v. Todd, 112 Ill. 379.

The proceeding is purely an involuntary one as to the property owner.   He is in no way responsible for mistakes that the petitioner may make, but it alone must suffer the consequences of its mistakes.   U. M. L. Ins. Co. v. Slee, 123 Ill. 57, 91.

3.   The complainant having deposited the money with the county treasurer in satisfaction of and in accordance with the judgment, and having taken possession under it, has no further concern or interest in the money.   The judgment has been satisfied by it, and it has received the full benefit thereof.   Upon payment of the money to the county treasurer, it became his duty, under the statute, to pay the money to the owner; and as Brown was the sole respondent in the proceeding, and the judgment rendered for his benefit, and as no claimant made any demands on the county treasurer adversely to Brown, it was his duty to pay this money to Brown immediately on Brown's demand.

We consider that the case of West Park Commissioners v. McCormick, 118 Ill. 655, is conclusive on this point.

4.   The complainant can not assert for and on behalf of the mortgagee any claim to this money, and has no interest in or concern with the equities that may exist as between the mortgagor and the mortgagee.

It has no right to assert a claim for the lienholder, which the latter does not choose to assert for himself.   While it might be to its advantage to clear up its title and avoid the consequences of its blunder, and get the mortgagee to take the money and surrender his lien on the land condemned, it can not act for the mortgagee.   This is particularly true and applicable here, where the evidence shows its urgent appeals to the mortgagee to make the demand for this money, and his persistent refusal to do so prior to the filing of this bill.

5.   No adverse claim to this money having been made and Brown being the sole respondent to the judgment, for whose benefit alone the award was made, it was the duty of the

county treasurer to pay this money to Brown immediately on his demand for it. The statute makes this his duty, and in refusing to pay this money to Brown on his repeated demands, the county treasurer was guilty of wrongfully withholding it from him, and became liable to pay interest on the money from that time.

Mr. CHARLES A. ALLEN, for appellees.

" The term ' owner' includes all persons who have an interest in the property." Sec. 65, Mills on Eminent Domain.

"The mortgagee is 'owner' within the meaning of the statute." Sherwood v. Lafayette, 109 Ind. 411 (10 N. E. 89).

" In the land or property taken, there may be various interests in different individuals. The entire value of the land is all that can be awarded to the several owners, and no contracts between the owners can oblige the public to pay more than the entire value of the land as a whole." Mills on Eminent Domain, Sec. 65; So. Park Com. v. Todd, 112 Ill. 379.

We think the verdict, judgment and these authorities establish the proposition that the award is for the entire value of the land taken or condemned, however numerous the owners or parties in interest may be.

The weight of authority is to the effect that the mortgagee, whether made a party defendant to a condemnation suit or not, is entitled to the award; that the award is a fund standing as an equivalent for the land taken. So. Park Com. v. Todd, 112 Ill. 379; Mills on Eminent Domain, Sec. 74; Bank of Auburn v. Roberts, 44 N. Y. 192; Hoyt v. Astor, 5 Wend. 603; Union Mutual Life Ins. Co. v. Slee, 123 Ill. 95; C. B. & Q. v. Chamberlin, 84 Ill. 347; Platt v. Bright, 29 N. J. Eq. 128–31, N. J. Eq. 81; Bright v. Platt, 32 N. J. Eq. 362.

MORAN, J. Brown was the owner, and by the condemnation of Brown's ownership and right of possession and paying the sum assessed as the value thereof into the hands of the county treasurer, complainant acquired and exercised the right of entry upon and enjoyment of the land condemned. It is difficult to perceive on what basis of equity complainant shall be entitled to hold and enjoy the rights it obtained by

the judgment of condemnation, and still be entitled to prevent the party whose interests and rights it acquired by the judgment, from having the possession and enjoyment of that which was awarded to him as the price and compensation for those interests. There is no pretense that Brown made any representations that were false, or concealed from complainant any fact that he was bound to disclose.

It is said that the equity is founded on complainant's mistake in not discovering that Dale held a mortgage on the land, and failing to make him a party to the condemnation proceedings. Conceding that the mistake was not to be ascribed to lack of diligence on complainant's part, and that it was such a mistake as equity would relieve against, what is the remedy which equity affords when its aid is invoked under that head of jurisdiction, where the alleged mistake is not mutual, and it is not accompanied or induced by inequitable conduct of the defendant? Is it not rescission, setting aside, placing the parties back where they were before the mistake occurred?

Pomeroy in his work on Equity Jurisdiction, Sec. 838, says: "All the possible modes in which the remedial jurisdiction occasioned by mistake, can be exercised, are the following: 1. Negatively, as a ground of defense, either in actions at law or in suits in equity, to defeat an enforcement of and recovery upon either legal or equitable rights of action. 2. Affirmatively, as a ground for rescinding a transaction and restoring the mistaken party to his original position by means of an appropriate legal action, and a recovery therein of money or property. 3. Affirmatively, as a ground for the equitable relief of rescinding a transaction, or canceling an agreement or other written instrument. 4. Affirmatively, as a ground for the equitable relief of reforming or re-executing a written instrument." Manifestly, if by a mistake a judgment has been entered which does not protect the rights of complainant, and to correct which it is entitled to equitable relief, it must be of the nature specified in the third division above quoted.

The effect of the decree in this case is to give the complain-

ant a benefit or an affirmative right because of his- mistake, instead of granting him mere relief from it. He has a practical reformation of the judgment into which the mistake entered, instead of a rescission or setting aside thereof. This is in violation of the rules governing this kind of equitable relief.

"Reformation," says Bispham, Sec. 469, "is a much more delicate remedy than rescission. Hence, in order to justify a decree for reformation in cases of pure mistake, it is necessary that the mistake should have been mutual. Where the mistake has been on one side only, the utmost that the party desiring relief can obtain, is rescission, not reformation." See also, Sec. 191, and cases cited in note.

Accordingly we find that when the mistake of one of the parties is made the basis of interference by equity with a judgment at law, the usual and almost invariable relief granted, is to set aside the judgment so that there may be a new trial on the merits. Pomeroy's Eq. Jur., Sec. 871–839.

The basis of this rule, that a complainant who seeks relief from the consequences of his own mistake may have rescission only, lies in the fundamental maxim that he who seeks equity must do equity. The facts as shown in this record present a proper occasion for the application of this maxim. It appears that appellee Brown was dissatisfied with the award of damages for his land, and sought to set aside the verdict because it was too small, and that Crawford, the attorney for the mortgagee, when applied to by the solicitor for complainant, stated that the verdict was less than the value of the land, and offered to enter the appearance of the mortgagee, provided complainant would agree to set aside the verdict and let a new trial be had, but to that complainant would not agree. It would not do equity when expressly requested, but on the contrary seeks to retain the advantage of what it regards as a favorable verdict, and comes into equity for a correction of its mistake by imposing on its adversary the burden resulting therefrom.

The decree is sought to be defended on the ground that the mortgagee is an owner, whether a party to the suit or not,

Brown v. Calumet River Ry. Co.

and that the award is a fund standing as an equivalent for the land taken. True, the mortgagee is an owner, and may subject the fund to the payment of the mortgage debt, and has a right to proceed in equity to foreclose against it, whereas, in this case, the award is for the whole value of the land; but that is a right to be asserted by the mortgagee, as was done in Platt v. Bright, 31 N. J. Eq. 82, cited and relied on by appellee. Perhaps if Dale was seeking to foreclose his mortgage, and to reach this fund as against Brown, it could be said that the complainant would have an equity to have this fund applied in payment of the mortgage as far as it would go, before resort should be had to the land taken; but Dale is not seeking to foreclose, and is not asserting any right to the fund, and we do not perceive that complainant occupies such position as to the fund or the mortgage, as to entitle it to come into equity to change by decree the relations that exist between Brown and his mortgagee, and with which they appear to be contented. Appellee having become a purchaser of part of the mortgaged premises, may, possibly, whenever a foreclosure is sought, assert its equity to enforce a sale of the land covered by the mortgage, in the inverse order of alienation. It certainly has no equity to tie up the money of appellant by a decree which allows him no interest thereon, while it continues to enjoy the possession of the land, which was obtained from appellant by operation of the judgment. Appellee was estopped by its condemnation petition and the judgment, from denying appellant's title or right to the compensation. P., P. & J. R. R. v. Laurie, 63 Ill. 264; S. P. Comm'rs v. Todd, 112 Ill. 380.

Appellant made a demand upon the county treasurer for the payment of the condemnation money to him, after the judgment had been affirmed, and he was then entitled to receive it. The decree of the Circuit Court must be reversed and the case remanded to the court with directions to dismiss the original bill, and to render a decree against said Davis and the complainant, for the payment to appellant of said sum of $17,500, with interest thereon at the rate of six per cent from the 6th of October, 1888.

*Reversed and remanded with directions.*